# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DANIEL CONTINO,                    )
                                   )
                 Plaintiff,        )
                                   )
       v.                          )      1:22CV300
                                   )
KILOLO KIJAKAZI,                   )
Acting Commissioner of Social      )
Security,                          )
                                   )
                 Defendant.        )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Daniel Contino, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, determining that Plaintiff's entitlement to Disability Insurance Benefits ("DIB") ended on November 1, 2018. (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 13, 16; see also Docket Entry 14 (Plaintiff's Memorandum); Docket Entry 17 (Defendant's Memorandum); Docket Entry 18 (Plaintiff's Reply)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 236-42) and, on February 3, 2011, the Social Security Administration ("SSA") found Plaintiff disabled as of December 10, 2010 (Tr. 113-15). On November 2, 2018, the SSA sent Plaintiff a notice of disability cessation advising him that, as a result of a Continuing Disability Review ("CDR") which showed medical improvement in his condition, he stopped qualifying for DIB as of November 1, 2018. (Tr. 118-28, 131-33.) Following denials of his challenge to that determination at the reconsideration level (Tr. 129, 495-502) and by a Disability Hearing Officer ("DHO") (Tr. 130, 143-56), Plaintiff sought a hearing before an ALJ (Tr. 162). Plaintiff (proceeding pro se) and a vocational expert ("VE") attended the hearing. (Tr. 31-83.) The ALJ thereafter determined that Plaintiff's disability ended as of November 1, 2018 (Tr. 13-25), and Plaintiff requested review with the Appeals Council (Tr. 234-35). The Appeals Council subsequently denied Plaintiff's request for review (Tr. 6-10), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

> 1. The most recent favorable medical decision finding that [Plaintiff] was disabled is the decision dated February 3, 2011. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, [Plaintiff] had the following medically determinable impairments: anaplastic astrocytoma and a seizure disorder. These impairments were found to meet [Listing] 13.13A1 (actually he met for 13.13A2 because he had a Grade III astrocytoma) of 20 CFR Part 404, Subpart P, Appendix 1.[1]

3. Through the date of this decision, [Plaintiff] has not engaged in substantial gainful activity.

. . .

4. The medical evidence establishes that, since November 1, 2018, [Plaintiff] has had the following medically determinable impairments: status post anaplastic astrocytoma, seizure disorder, and degenerative disc disease of the lumbar spine. These are [Plaintiff]'s current impairments.

5. Since November 1, 2018, [Plaintiff] has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

6. Medical improvement occurred on November 1, 2018.

. . .

7. The medical improvement is related to the ability to work because, by November 1, 2018, [Plaintiff]'s CPD impairment(s) no longer met or medically equaled the same listing(s) that was met at the time of the CPD.

8. Since November 1, 2018, [Plaintiff] has continued to have a severe impairment or combination of impairments.

. . .

---

[1] The ALJ's finding that Plaintiff's Grade III anaplastic astrocytoma "actually met [Listing] 13.13A2" (Tr. 18 (bold font omitted)) rather than Listing 13.13A1 as found by the SSA overlooks the fact that, as of the SSA's decision on February 3, 2011, Listing 13.13A1 covered "[h]ighly malignant tumors, such as medulloblastoma or other primitive neuroectodermal tumors (PNETs) with documented metastases, <u>grades III and IV astrocytomas</u>, glioblastoma multiforme, ependymoblastoma, diffuse intrinsic brain stem gliomas, or primary sarcomas," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 13.13A1 (version eff. Aug. 2, 2010 to Mar. 23, 2011) (emphasis added).

9. Based on the impairments present since November 1, 2018, [Plaintiff] has had the residual functional capacity to perform light work . . . except he can frequently stoop, kneel, crouch, crawl, balance, and climb ramps or stairs. He cannot climb ladders, ropes, or scaffolds. He should not be exposed to hazards such as unprotected heights or dangerous machinery. He cannot operate a motor vehicle, and should not work in or around large bodies of water, power lines, or open flames.

. . .

10. Since November 1, 2018, [Plaintiff] has been unable to perform past relevant work.

. . .

14. Since November 1, 2018, considering [Plaintiff]'s age, education, work experience, and residual functional capacity based on the impairments present since November 1, 2018, [Plaintiff] has been able to perform a significant number of jobs in the national economy.

. . .

15. [Plaintiff]'s disability ended on November 1, 2018, and [Plaintiff] has not become disabled again since that date.

(Tr. 18-24 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

4

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

5

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the [SSA] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id.

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

After a claimant qualifies for benefits under the Act, no presumption of continuing disability exists, see 42 U.S.C. § 423(f)(4); rather, the decision to award benefits remains subject to a periodic CDR, see 20 C.F.R. § 404.1589. The SSA utilizes the prior determination granting benefits — the CPD — as a reference to evaluate whether any medical improvement has occurred relating to the claimant's ability to work. See 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594. To make this determination, the Commissioner employs an eight-step sequential evaluation process ("SEP"):

 1) Is the claimant engaging in substantial gainful activity?

 2) If not, do the claimant's impairments meet or medically equal the severity of any listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1?

 3) If not, has there been any medical improvement in the severity of the claimant's impairments?

 4) If medical improvement has occurred, does such improvement relate to the claimant's ability to work?

 5) If no medical improvement has occurred, does an exception apply?

 6) If medical improvement relates to the claimant's ability to work, do the claimant's current impairments, singly or in combination, qualify as severe?

 7) If severe impairments exist, does the claimant's residual functional capacity ("RFC") permit the performance of past relevant work?

 8) If not, does the claimant have the RFC to perform other work existing in significant numbers in the national economy?

See 20 C.F.R. § 404.1594(f). If the Commissioner finds conclusively that a claimant qualifies as disabled at any point in this process, review does not proceed to the next step. See id.

### B. Assignment of Error

Plaintiff's first and only issue on review argues that "[t]he ALJ erred by finding that Plaintiff no longer meets the criteria of Listing 13.13." (Docket Entry 14 at 5 (bold font omitted); see also Docket Entry 18 at 1-2.) In particular, Plaintiff maintains that the SSA found Plaintiff disabled as of February 3, 2011, because his "brain cancer . . . me[t] Listing 13.13A1" (Docket Entry 14 at 5 (citing Tr. 16, 18, 113-14)) and thus that "the only dispute is whether he ever ceased to meet that [L]isting" (id.). In that regard, Plaintiff notes that, because Listing 13.13 "does not contain a specification for when disability ceases," his brain cancer should "be considered 'disabling until at least 3 years after onset of **complete remission**.'" (Id. at 5-6 (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 13.00H.2) (emphasis supplied by Plaintiff).) Plaintiff further points out that, under the regulations, "[c]omplete remission begins when the original tumor is no longer evident and during the three-year period of complete remission there must also be no recurrence or relapse." (Id. at 6 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 13.00H.2).) According to Plaintiff, his "tumor could not be completely resected because the posterior portion of the tumor was involved with his

8

language and speech function . . . [and t]hus, [his] astrocytoma was never in complete remission, per [the SSA]'s own regulations." (Id.)  In Plaintiff's view, the ALJ's step-three rationale "that there ha[d] been no evidence of recurrence or spread . . . is in error because [Plaintiff]'s condition never satisfied the [SSA]'s definition of 'complete remission,' and thus there technically would be no recurrence and the lack of spread is irrelevant to the question of whether [he] continue[d] to meet the [L]isting." (Id. at 6 (citing Tr. 19).)  Plaintiff requests that "the ALJ's decision [] be reversed for payment of [] ongoing benefits and [Plaintiff's] past-due benefits" (id.) or, "[i]n the alternative, . . . be remanded so that the ALJ may attempt to provide a plausible explanation for his apparent departure from the straightforward language of the regulations" (id. at 8).  For the reasons explained more fully below, Plaintiff's contentions have merit but warrant remand rather than a reversal for an award of benefits.

"Under Step 3, the [SSA's SEP] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in appendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" Radford v. Colvin, 734 F.3d 288, 293 (4th Cir. 2013) (quoting 20 C.F.R. § 404.1520(a)(4)(iii) (internal bracketed numbers omitted)).  "The listings set out at 20 CFR pt. 404, subpt. P, App. 1, are descriptions of various physical and mental illnesses and

9

abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted). "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 160 (4th Cir. 1990) (citing <u>Zebley</u>, 493 U.S. at 530, and 20 C.F.R. 404.1526(a)); <u>see also</u> <u>Zebley</u>, 493 U.S. at 530 ("An impairment that manifests only some of those criteria [in a listing], no matter how severely, does not qualify.").

To satisfy the criteria of Listing 13.13A, Plaintiff must show that he meets or equals the following requirements:

> A. Primary central nervous system (CNS; that is, brain and spinal cord) cancers, as described in 1, 2, or 3:
>
>> 1. Glioblastoma multiforme, ependymoblastoma, and diffuse intrinsic brain stem gliomas (see [§] 13.00K6a).
>>
>> 2. Any <u>Grade III</u> or Grade IV CNS cancer (see [§] 13.00K6b), including <u>astrocytomas</u>, sarcomas, and medulloblastoma and other primitive neuroectodermal tumors (PNETs).
>>
>> 3. Any primary CNS cancer, as described in a or b:
>>
>>> a. Metastatic.
>>>
>>> b. Progressive or recurrent following initial anticancer therapy.

10

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 13.13A (emphasis added). In addition, the SSA "will consider an impairment[] that meets or medically equals a listing in th[e listings for "Cancer (Malignant Neoplastic Diseases)"] to be disabling until <u>at least 3 years</u> after onset of <u>complete remission</u>." Id., § 13.00H.2 (emphasis added). That section further describes "complete remission" as occurring when "the <u>original tumor</u> or a recurrence or relapse and any metastases have not been evident for at least 3 years." Id. (emphasis added).

In analyzing whether Plaintiff's anaplastic astrocytoma continued to meet the criteria of Listing 13.13A, the ALJ provided the following rationale:

> . . . [Plaintiff] no longer meets the requirement of primary central nervous system, peripheral nerve, or spinal root cancers as required by [L]isting 13.11 [sic].
>
> . . .
>
> The medical evidence supports a finding that, by November 1, 2018, there had been a decrease in medical severity of the impairments present at the time of the CPD. [Plaintiff] has a history of brain cancer and has been treated with surgery, radiation, and chemotherapy. At the [CPD], [Plaintiff] had a <u>grade three astrocytoma that could not be totally resected due to endangerment of his speech and language center in the brain</u>. Since treatment, there has been <u>no evidence of recurrence or spread</u>. There has been <u>no evidence of any tumor</u> or metastasis <u>for more than 3 years</u> and therefore [Plaintiff] does not meet the criteria required in the 13.00 section of the Listing of Impairments.

(Tr. 19 (emphasis added) (internal parenthetical citation omitted).) For the reasons more fully explained below, the ALJ's

11

above-quoted analysis does not point to substantial evidence supporting his finding that Plaintiff's Grade III anaplastic astrocytoma no longer met or equaled the requirements of Listing 13.13A.

Most significantly, the record fails to support the ALJ's assertion that "no evidence of <u>any tumor</u> [existed] . . . for more than 3 years" (Tr. 19 (emphasis added)). The medical evidence demonstrates that Plaintiff experienced a seizure in December 2010 which resulted in loss of consciousness, shaking, tongue-biting, and incontinence. (<u>See</u> Tr. 349.) A CT scan of Plaintiff's head revealed a low-attenuation area in Plaintiff's left frontoparietal region with surrounding edema and some mass effect concerning for underlying mass. (<u>See</u> Tr. 356.) A follow-up MRI of Plaintiff's brain showed "a T2 hyperintense lesion involving the cortex and subcortical white matter of the left middle frontal gyrus" measuring 3 by 3.2 by 3.3 centimeters and "mass effect with effacement of the adjacent sulci." (Tr. 403; <u>see also</u> Tr. 393 (pre-operative MRI of Plaintiff's brain reflecting large area of abnormal T1 hypointensity with T2 hyperintensity in the posterior left frontal lobe with mild mass effect).)

Plaintiff underwent a craniotomy and his surgeon noted as follows regarding the removal of the tumor:

> Electrical stimulation revealed [Plaintiff]'s motor area. What was interesting was that [<u>Plaintiff</u>] <u>had a speech</u> <u>area in the superior part of his posterior inferior</u> <u>frontal gyrus</u>. He had a second speech area in the

12

> posterior part of the middle frontal gyrus. This was
> really a very definite finding. Every time we stimulated
> the posterior part of the middle frontal gyrus,
> [Plaintiff] was not able to name although he could talk.
> Unfortunately this lay over the posterior portion of the
> tumor. Thus, the speech mapping was very important. The
> operating microscope was brought into the field. The
> tumor itself was firmer. Histologic assessment rated
> this as a grade II or grade III tumor. The anterior
> portion of the tumor was removed. We went to the more
> posterior portion of the tumor. [Plaintiff] began having
> difficulty with language function and thus this was left
> behind.

(Tr. 391 (emphasis added).) Thereafter, a post-resection CT of Plaintiff's brain demonstrated interval development of a three millimeter left to right midline shift with a mild mass effect on the left lateral ventricle. (See Tr. 371; see also Tr. 359 (post-resection MRI of Plaintiff's brain showing small mass effect in the left lateral ventricle with interval increase in the left to right midline shift from three millimeters to six millimeters).)

Temporary expressive aphasia and complex partial seizures complicated Plaintiff's post-operative course, resulting in the prescription of anti-seizure medications. (See Tr. 361.) Plaintiff's cancer physicians diagnosed a "partial resected anaplastic astrocytoma" (Tr. 444 (emphasis added)) and treated Plaintiff with radiation and the chemotherapy drug Temodar (see Tr. 444, 451). Plaintiff completed one full year of Temodar and ended his treatment on February 8, 2012. (See Tr. 471.)

Plaintiff sought follow-up evaluation at the Duke Cancer Institute on March 26, 2018 (see id.), and an MRI of Plaintiff's

13

brain recorded a "[s]table 10 x 6 mm focal enhancement at the superior aspect of the resection cavity" with no "evidence of disease progression." (Tr. 474 (emphasis added).) The Duke physician's impression remained "[a]naplastic astrocytoma of frontal lobe." (Id.) An MRI of Plaintiff's brain on December 24, 2018, continued to show "a 3 x 5 mm focus of enhancement in the deep brain along the lateral margin of the left lateral ventricle." (Tr. 493 (emphasis added).) Although the interpreting physician characterized the focus of enhancement as "indeterminate but probably benign," he noted that he "d[id] not have any recent examination with which to compare" and that, "[i]f [such recent] exams d[id not exist . . ., repeat scan could be performed in 6-8 weeks to ensure that the enhancing foci [we]re not progressive." (Tr. 493-94.)

That evidence, which suggests that a portion of Plaintiff's anaplastic astrocytoma remained in his brain up to and including November 1, 2018, undermines both the ALJ's finding that, since November 1, 2018, Plaintiff had the medically determinable impairment of "status post anaplastic astrocytoma" (Tr. (emphasis added)), and the ALJ's finding that "no evidence of any tumor [existed] . . . for more than 3 years" (Tr. 19 (emphasis added)). As the ALJ did not discuss the post-resection imaging (see id.) which continued to show areas of focal enhancement at the site of the resection through December 2018 (see Tr. 359, 371, 474, 493),

14

the Court cannot meaningfully review the ALJ's finding that, as of November 1, 2018, "no evidence of any tumor [existed] . . . for more than 3 years" (Tr. 19 (emphasis added)).[3] Moreover, as Plaintiff argues (see Docket Entry 14 at 6; see also Docket Entry 18 at 1-2), the ALJ's finding that Plaintiff's cancer had not recurred or spread (see Tr. 19) did not address the underlying, more important question of whether Plaintiff's original brain cancer had reached and remained in "complete remission" for "at least three years," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 13.00H.2 (emphasis added). See Hatten v. Commissioner of Soc. Sec., Civ. No. 11-2177, 2013 WL 586851, at *8 (C.D. Ill. Jan. 22, 2013) (unpublished) ("It does not appear that the ALJ considered, pursuant to [Section] 13.00H2, whether and when [the p]laintiff's grade III astrocytoma entered complete remission. To support the ALJ's determination that [the p]laintiff was no longer disabled as of January 1, 2008, the evidence would need to show that [the p]laintiff's complete remission began by at least January 1, 2005. Thus, although the ALJ noted that records from 2007, 2008, and 2009

---

[3] In finding that Plaintiff's brain cancer no longer met the requirements of Listing 13.13A, the ALJ cited to the DHO's finding that medical improvement had occurred. (Tr. 19 (citing Tr. 149).) The DHO noted, however, that Plaintiff "had treatment with residual and stable leftover disease that ha[d] not progressed over seven years of surveillance," as well as that Plaintiff's "residual tumor [wa]s not clinically diagnosed with a grade and show[ed] no evidence for metastatic spread." (Id. (emphasis added).) The DHO's acknowledgment that portions of Plaintiff's original brain tumor continued to exist (whether clinically graded or not and whether progressing or spreading or not) would tend to support Plaintiff's position that he had not reached the regulations' definition of "complete remission" as of November 1, 2018, e.g., his "original tumor or a recurrence or relapse and any metastases ha[d] not been evident for at least 3 years," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 13.00H.2 (emphasis added).

15

showed no <u>progression or recurrence</u>, these records are insufficient to establish that [the p]laintiff was no longer disabled as of January 1, 2008. It is not clear when [the p]laintiff entered complete remission. . . . Accordingly, this case must be remanded for the ALJ to determine whether and when [the p]laintiff's astrocytoma entered complete remission." (emphasis added)), <u>recommendation adopted</u>, 2013 WL 586824 (C.D. Ill. Feb. 13, 2013) (unpublished).

In light of the ambiguity of the medical record as to whether (or when) Plaintiff's anaplastic astrocytoma reached complete remission, the Court should decline Plaintiff's request that "the ALJ's decision [] be reversed for payment of [] ongoing benefits and [Plaintiff's] past-due benefits" (Docket Entry 14 at 7) but should instead remand the matter "so that the ALJ may attempt to provide a plausible explanation" (<u>id.</u> at 8) for his finding that Plaintiff's brain cancer no longer met the criteria of Listing 13.13A.

### III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated, and that this matter be remanded under sentence four of 42 U.S.C. 405(g) for further administrative proceedings, to include reevaluation of 1) whether Plaintiff's Grade III anaplastic astrocytoma reached "complete remission" under

Section 13.00H.2 of 20 C.F.R. Part 404, Subpart P, Appendix 1, and if so, the date on which Plaintiff's cancer entered "complete remission," and 2) whether, in light of the ALJ's findings with regard to "complete remission," Plaintiff's Grade III anaplastic astrocytoma continues to meet the criteria of Listing 13.13A. As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 13) should be granted in part (i.e., to the extent it requests remand), and Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) should be denied.

                                                    /s/ L. Patrick Auld
                                                        **L. Patrick Auld**
                                        **United States Magistrate Judge**

April 13, 2023